JUDGE CAPRONI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

    -against-

YUE HAN,

                Defendant,

    -and-

WEI HAN,

                Relief Defendant.

15 CV 9260

15 Civ. _____ (___)

---

### DECLARATION OF JORDAN BAKER IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S EMERGENCY APPLICATION FOR AN ASSET FREEZE AND OTHER RELIEF

I, Jordan Baker, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am employed as a securities compliance examiner in the Division of Enforcement in the New York Regional Office of Plaintiff United States Securities and Exchange Commission (the "Commission"). My official duties with the Commission include participating in fact-finding inquiries and investigations to identify possible violations of the federal securities laws and assisting the Commission's litigation of enforcement actions. I have been employed by the Commission since August 2012. Prior to joining the staff of the Commission, I worked for the Federal Bureau of Investigation ("FBI") as a forensic accountant. I hold a bachelor's degree in accounting from Arkansas State University.

2.     I have been a member of the Commission investigative team responsible for the investigation of Yue "John" Han ("Defendant") and Wei Han ("Relief Defendant") (collectively, "Defendants") to determine whether Defendants traded in the securities of, among others, Yodlee, Inc. ("Yodlee"); Zulily, Inc. ("Zulily"); Rentrak Corporation ("Rentrak"); and KLA-Tencor Corp. ("KLA") (collectively, the "Companies") in violation of the Securities Exchange Act of 1934 and the rules promulgated thereunder.  In connection with this investigation (the "Investigation"), I have obtained and reviewed various records related to Defendant and Relief Defendant, including public records, brokerage account records, internet service provider ("ISP") records, documents produced by the Financial Industry Regulatory Authority ("FINRA"), documents produced by Goldman, Sachs & Co. ("Goldman Sachs"), and documents produced by U.S. Customs and Border Protection.

3.     I make this Declaration in support of the Commission's Emergency Application for an Asset Freeze and Other Relief against Defendant and Relief Defendant (the "Application").

4.     I make this Declaration based on my personal knowledge and my review of documents the Commission obtained from non-parties during the course of its investigation, including information the Commission received from brokerage firms, ISPs, FINRA, Goldman Sachs, and U.S. Customs and Border Protection.

**Backgrounds of Defendant Yue Han and Relief Defendant Wei Han**

5.     According to brokerage account opening documents produced by Fidelity Investments ("Fidelity"), Yue Han is a citizen of China who lived in New York City and worked for Goldman Sachs.  (Attached hereto as <u>Exhibit 1</u> are true and correct copies of the Fidelity account opening documents.)

6. Based on brokerage account documents produced by Scottrade, Inc. ("Scottrade"), Wei Han is a citizen and resident of China. (Attached hereto are true and correct copies of the relevant brokerage account opening documents as Exhibit 3.)

7. Employees of Goldman Sachs informed me that Yue Han worked at Goldman Sachs' office in Jersey City, New Jersey and at its headquarters in New York, New York from December 2014 to early October 2015.

8. I reviewed various compliance and training documents produced by Goldman Sachs, including:

   a. Two spreadsheets showing the "Training Name" of various trainings Yue Han received, the dates Yue Han completed those trainings, and containing a link to the training materials, bearing the Bates designations GS-PF00000070 and GS-PF00000141. (Attached hereto as Exhibit 4 and Exhibit 5 are true and correct copies of the two spreadsheets, Bates stamped GS-PF00000070 and GS-PF000000141, respectively);

   b. Goldman Sachs' Communication and Information Security Essentials, a training course which Yue Han completed on December 5, 2014, a true and correct copy of which is attached hereto as Exhibit 6. (See also Exhibit 4 at 1 (showing that Yue Han completed the training on December 5, 2014)); and

   c. Goldman Sachs' New Hire Orientation, a training course which Yue Han completed on December 5, 2014, a true and correct copy of which is attached hereto as Exhibit 7. (See also Exhibit 5 at 1 (Showing Yue Han's completion of the course on December 5, 2014).)

3

9. I have also reviewed data produced by U.S. Customs and Border Protection. (Attached hereto as <u>Exhibit 8</u> is a true and correct copy of documents produced by U.S. Customs and Border Protection.) According to these records: (a) Wei Han was last in the United States from May 16 to June 27, 2012 (<u>Exhibit 8</u> at 5-6); and (b) Yue Han left the United States for Shanghai on October 22, 2015. (<u>Id.</u> at 1.)

### Goldman Sachs' Retention as Financial Advisor on Certain Mergers & Acquisitions

10. In connection with this Investigation, I reviewed proxy statements and other forms publicly filed with the Commission regarding the announcements of the following transactions:

    a. Envestnet, Inc.'s acquisition of Yodlee, first announced on August 10, 2015. (Attached hereto as <u>Exhibit 9</u> is a true and correct copy of excerpts of the relevant pages of Yodlee's Schedule 14A, filed with the Commission on October 26, 2015);[1]

    b. Liberty Interactive Group's acquisition of Zulily, through a tender offer, first announced on August 17, 2015. (Attached hereto as <u>Exhibit 10</u> is a true and correct copy of excerpts of the relevant pages of Zulily's Schedule 14D-9, filed with the Commission on September 1, 2015);[2] and

    c. comScore, Inc.'s acquisition of Rentrak, first announced on September 29, 2015. (Attached hereto as <u>Exhibit 11</u> is a true and correct copy of excerpts

---

[1] Filing available in its entirety at http://www.sec.gov/Archives/edgar/data/1161315/000104746915008039/a2226342zdefm14a.htm

[2] Filing available in its entirety at http://www.sec.gov/Archives/edgar/data/1478484/000119312515308647/d96672dsc14d9.htm

4

of the relevant pages of comScore, Inc.'s Form S-4 Registration Statement, filed with the Commission on October 30, 2015.)[3]

11. Each of the above proxy statements and other public filings indicate that Goldman Sachs represented one party in each of those three mergers & acquisition ("M&A") transactions. (See Exhibit 9 at 99 ("[O]n September 17, 2012, Yodlee engaged Goldman Sachs as its exclusive financial adviser with respect to a possible sale of the Company."); Exhibit 10 at 14-15 (from approximately April 2015, Goldman Sachs acted as financial adviser to Yodlee); and Exhibit 11 at 35 ("On October 28, 2013, Rentrak executed an engagement letter with Goldman Sachs, Rentrak's financial advisor, to provide financial advice and assistance in connection with the possible sale of all or a portion of Rentrak.").

12. I also reviewed a chronology of significant events relating to Lam Research Corporation's ("Lam Research") acquisition of KLA ("KLA Chronology"), which was provided to FINRA by Goldman Sachs, and a press release, dated October 21, 2015, announcing Lam Research's acquisition of KLA. (Attached hereto as Exhibit 12 and Exhibit 13, respectively, are true and correct copies of the KLA Chronology and the Lam Research press release.) According to those documents, Goldman Sachs was Lam Research's financial adviser for the KLA acquisition from approximately May 2015. (See Exhibit 12 at Ex. B (in early-to-mid May 2015, "The CFO of Lam Research contact[ed] a representative of Goldman Sachs to request that it commence work on an analysis of a potential acquisition of KLA-Tencor . . . ."); Exhibit 13 at 4 ("Goldman Sachs is acting as exclusive financial advisor to Lam Research . . . .").)

---

[3] Filing available in its entirety at http://www.sec.gov/Archives/edgar/data/1158172/000119312515360700/d53131ds4.htm

5

13. In addition, I reviewed four press releases, which I obtained from Bloomberg, announcing each of the M&A transactions here at issue. (Attached hereto as Exhibits 14 to 17 are true and correct copies of screen shots of those press releases taken from Bloomberg.) Each of these Exhibits contains, in the upper left-hand, a date and time stamp showing the approximate time the press release was issued.

**Trading Profits**

14. Yue Han applied to open a brokerage account at Fidelity on December 1, 2014 (his application was approved on approximately December 2, 2014). (See Exhibit 1 at 4, 5.) On September 17, 2015, Fidelity informed Yue Han that it would be terminating his account with Fidelity. (See a true and correct copy of a letter from Fidelity to Yue Han, Sept. 17, 2015, attached hereto as Exhibit 2.) Fidelity produced to the Commission account statements, order files, internet protocol ("IP") address logs, and trade blotters (collectively, "Fidelity Trade Records") showing trades in the Fidelity brokerage account held by Yue Han.

15. On or about September 21, 2015, a brokerage account was opened at Scottrade, Inc. ("Scottrade") in the name of Wei Han (the "Wei Han Account"). Scottrade produced to the Commission account statements, order files, IP address logs, money deposit information, and trade blotters (collectively, "Scottrade Trade Records," and together with the Fidelity Trade Records, the "Trade Records") showing cash deposits and trades in the Scottrade brokerage account held in Wei Han's name.

16. As discussed is paragraphs 21-25 below, I determined that New York-based IP addresses, either assigned to or associated with Yue Han, were used to place all of the relevant trade orders in the Wei Han Account.

6

17. I reviewed and analyzed the Trade Records in the following brokerage accounts held by Yue Han and Wei Han:[4]

    a. Fidelity Account Number ending in 3834 in the name of Yue Han (hereinafter the "Yue Han Account"); and

    b. The Wei Han Account, a Scottrade Account Number ending in 6866 in the name of Wei Han.

Based on my review of the Trade Records, I created a summary chart calculating the profits associated with the trading in the securities of the Companies in these accounts. In that same summary chart, I also noted where these accounts purchased call options that were "out-of-the-money." I refer to a call option as being "out-of-the-money" when the strike price for the option, meaning the price at which the option entitles its holder to buy the underlying security, is higher than the market price for the underlying security at the time the option is acquired. Attached as Exhibit 18 to this Declaration is my summary chart calculating the profits associated with trading in the securities of the Companies in these two accounts, and noting instances when these accounts purchased stock options that were "out-of-the-money." According to my calculations of the 960 options purchased in the Yue Han Account and the Wei Han Account in the Companies, 910 were "out-of-the-money."

18. Based on my calculations, profits generated from trading in securities of the four Companies, including trades placed in both the Yue Han Account and the Wei Han Account, total $468,131.90.

---

[4] To keep account numbers confidential, I have provided only the last four digits of account numbers. In Trade Records attached as exhibits to this declaration, all but the last four numbers from account numbers in the exhibits attached to this Declaration have also been redacted. Other personal information, such as Social Security Numbers and birth dates, has also been redacted from the exhibits attached to this Declaration, in accordance with Fed. R. Civ. P. 5.2.

19. In order to prepare the summary of the profits associated with trading in securities of the Companies, I first calculated the profits generated from trading the securities of each Company in the Yue Han Account and the Wei Han Account. (True and correct copies of the Fidelity Trade Records and the Scottrade Trade Records that I summarized and used to calculate the profits set forth in Exhibit 18 are attached hereto as Exhibit 19 and Exhibit 20, respectively.)[5]

20. In addition, Scottrade produced a document entitled "WEI HAN – Transfer Account Details" ("Transfer Details"). (A true and correct copy of the Transfer Details is attached hereto as Exhibit 29.) The Transfer Details show that $40,000 was transferred into the Wei Han Account between September 25 and October 13, 2015 from an account at Chase Bank bearing an account number ending 5380. Documents received from J.P. Morgan Chase identify Yue Han as the holder of that account. (I attach hereto as Exhibit 21 true and correct copies of the relevant documents produced by J.P. Morgan Chase showing that the account ending in 5380 was held in Yue Han's name.)

**Account Logins from New York City**

21. Following document requests the Commission staff submitted to Fidelity and Scottrade, those brokerage firms produced account data reflecting the times and dates of account activity and the IP addresses associated with that activity. (Attached hereto as Exhibit 22 and Exhibit 23 are true and correct copies of the relevant excerpts of the IP logs produced by Fidelity and Scottrade, respectively.)

---

[5] In reviewing the trade blotter for the Yue Han Account I observed that Yue Han placed multiple purchase orders, totaling approximately 100 Yodlee call options, on July 20, 2015. However, those orders were not filled. Yue Han placed his first successful purchase orders for Yodlee call options on July 22, 2015. (See Exhibit 18 at 2.)

22. Using certain of the Trade Records, Commission Staff and I located the order dates and times of the relevant trades in both accounts. I then compared the order dates and times to the IP logs to determine the IP addresses used to place orders in both accounts. I determined that two IP addresses were used to place relevant orders in the Wei Han Account: 72.225.168.143 and 70.199.76.149. Specifically, I determined that:

    a. 72.225.168.143 IP address was used to place fourteen trades made in KLA options in the Wei Han Account from October 13 to 21, 2015 and one trade in Rentrak common stock on October 1, 2015; and

    b. 70.199.76.149 IP address was used to place one trade in Rentrak common stock on September 29, 2015 in the Wei Han Account.

23. Documents produced by Time Warner show that: (a) Time Warner was the ISP for IP address 72.225.168.143; and (b) IP address 72.225.168.143 was—at the time of the relevant trading—associated with an account in the name of Yue Han at 67 Wall Street, Apt. 5D, New York, New York, 10005-3185, the same address listed on Yue Han's Fidelity Account statements from February 1, 2015 through October 31, 2015. (True and correct copies of the relevant documents produced by Time Warner are attached hereto as <u>Exhibit 24</u>.)

24. The Wei Han Account was also accessed from IP address 70.199.76.149, as referenced in paragraph 22(b), above. Records produced by Fidelity list Yue Han's phone number as (917) 566-3308. (<u>See</u> <u>Exhibit 1</u> at 1.) Records produced by Verizon Wireless show that this phone number was associated with IP address 70.199.76.149 at the time that Rentrak options were purchased in the Wei Han Account on September 29, 2015. (True and correct copies of the relevant documents produced by Verizon Wireless are attached hereto as <u>Exhibit 25</u>.)

25.     Exhibit 18 hereto sets out the IP addresses used to make each relevant trade in the Wei Han Account.

**Stock Prices Increase**

26.     I have reviewed publicly-available stock price and volume data from Yahoo! Finance for Yodlee, Zulily, Rentrak, and KLA.  (Attached as Exhibit 26 to this Declaration are true and correct copies of printouts from Yahoo! Finance showing this stock price and volume data.)  I reviewed the stock price and volume data for these securities for the days immediately prior to and after the announcements of each of the M&A deals involving these Companies.  I created a summary chart showing the percentage increase in each security's stock price that occurred as of the market close following the announcement of the M&A deals (versus the previous day's closing stock price).  The summary chart also shows the percentage increase in each security's trading volume that occurred as of the market close following the announcement of the M&A deals (versus the previous day's trading volume):

| Security | Announcement Date | Stock Price Increase (close to close)[6] | Volume Increase |
|---|---|---|---|
| Yodlee | August 10, 2015 | 29% | 3,876% |
| Zulily | August 17, 2015 | 49% | 5,862% |
| Rentrak | September 29, 2015 | 25% | 1,324% |
| KLA-Tencor | October 21, 2015 | 19% | 747% |

**Status of Proceeds from Trades**

27.     Based on a review of Trade Records from the Yue Han Account—between August 24 and October 3, 2015—Yue Han transferred $64,020.80 from the Yue Han Account to bank accounts held in Yue Han's name:  (a) $35,189.49 to a J.P. Morgan Chase account ending

---

[6]     I measured the change in price and volume from the closing price on the trading day immediately preceding the announcement to the closing price on the trading day immediately following the announcement.

in 1520; and (b) $28,831.31 to a Wells Fargo account ending in 7629.  (Exhibit 19 at last three pages of Exhibit ("Integrated Cashiering Platform" documents showing all but one penny of the Fidelity account being transferred out to Wells Fargo and J.P. Morgan Chase).)

28.     Based on a review of Trade Records from the Wei Han Account, as of October 31, 2015, the account holds $391,347.01 in cash and $42,693.70 in securities.  (Exhibit 20, October 2015 Statement, at 1.)

### Other Accounts

29.     In addition to the Yue Han Account and the Wei Han Account, I have also identified three bank accounts held in the name of Yue Han at:  (a) J.P. Morgan Chase (account number ending 5380); (b) J.P. Morgan Chase (account number ending 1520); and (c) Wells Fargo (account number ending 7629).

### Yue Han's and Wei Han's Phone Numbers and Email Addresses

30.     Records produced by Fidelity show that Yue Han's email address is YUEHAN1985@GMAIL.COM and that his cell phone number is +1 (917) 566-3308.  (See Exhibit 1 at 1.)

31.     Records produced by Scottrade identify Wei Han's (a) phone numbers as 86-13196302188 and 86-2937296816; and (b) email address as HANWEI654321@gmail.com.  (See Exhibit 3 at 1.)  In addition, Scottrade produced recordings of certain phone calls placed to Scottrade, between October 27 and 28, 2015, by an individual purporting to be Wei Han.  (True and correct copies of translations of the transcriptions of those phone calls are attached hereto as Exhibits 27-28.)  According to transcriptions of those calls, the individual purporting to be Wei Han confirmed that his phone number is 86-13196302188 and that his cell phone number is either 86-13162136547 or 86-13162136541.  (See Exhibit 27 at 4; Exhibit 28 at 8.)

I declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on November 24, 2015 in New York, New York.

*Jordan Baker*
Jordan Baker